# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

St. Jude Medical, LLC (f/k/a St. Jude
Medical, Inc.), and Abbott Laboratories,

               Plaintiffs,

vs.

Muddy Waters LLC, Muddy Waters
Capital LLC, Carson C. Block, MedSec
Holdings Ltd., MedSec LLC, Justine Bone,
and Dr. Hemal M. Nayak,

               Defendants.

Case No. 16-cv-03002
(DWF/DTS)

---

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO AMEND PROTECTIVE ORDER

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND ................................................................................. 1

III.    ARGUMENT ........................................................................................................ 7

        A.      Plaintiffs Must Show Good Cause to Justify the "Drastic" Remedy of a
                Generic AEO Provision. ............................................................................ 8

        B.      Plaintiffs Have Again Failed to Show Good Cause for a Generic AEO
                Designation. ............................................................................................. 12

        C.      The Proposed AEO Provision Would Prejudice Defendants. ..................... 19

IV.     CONCLUSION .................................................................................................. 20

4845-5439-5980v.8 0105407-000002

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ark. River Power Auth. v. Babcock & Wilcox Power Generation Grp., Inc.*,
  2015 WL 2128312 (D. Colo. May 5, 2015)...................................................................... 9

*Arvco Container Corp. v. Weyerhaeuser Co.*,
  2009 WL 311125 (W.D. Mich. Feb. 9, 2009)....................................................... 10, 16

*Athey v. Farmers Ins. Exch.*,
  234 F.3d 357 (8th Cir. 2000) ...................................................................................... 17

*Burris v. Versa Prods., Inc.*,
  2013 WL 608742 (D. Minn. Feb. 19, 2013) ......................................................... 10, 14

*Bussing v. COR Clearing, LLC*,
  2015 WL 4077993 (D. Neb. July 6, 2015) ........................................................... 10, 11

*Cardenas v. Prudential Ins. Co. of Am.*,
  2003 WL 23101803 (D. Minn. Dec. 9, 2003)............................................................. 10

*Carlson Cos., Inc. v. Sperry & Hutchinson Co.*,
  374 F. Supp. 1080 (D. Minn. 1973).......................................................................... 11

*CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*,
  2017 WL 2311670 (N.D. Iowa May 26, 2017)................................................... *passim*

*United States ex rel. Daugherty v. Bostwick Labs.*,
  2013 WL 3270355 (S.D. Ohio June 26, 2013) ........................................................... 16

*Defazio v. Hollister, Inc.*,
  2007 WL 2580633 (E.D. Cal. Sept. 5, 2007)............................................................. 19

*ESPN, Inc. v. Office of Comm'r of Baseball*,
  76 F. Supp. 2d 383 (S.D.N.Y. 1999)........................................................................... 17

*Frees, Inc. v. McMillian*, 2007 WL 184889
  (W.D. La. Jan. 22, 2007), *aff'd*, 2007 WL 1308388 (W.D. La. May 1, 2007)............ 19

*Gen. Dynamics Corp. v. Selb Mfg. Co.*,
  481 F.2d 1204 (8th Cir. 1973) ...................................................................................... 8

ii

*Gibson v. Resort at Paradise Lakes, LLC*,
  2017 WL 735457 (M.D. Fla. Feb. 24, 2017) ............................................................. 14

*Honeywell Int'l Inc. v. ICM Controls Corp.*,
  2013 WL 12139845 (D. Minn. Sept. 24, 2013) ........................................................ 8

*K & M Int'l, Inc. v. NDY Toy, LLC*,
  2015 WL 520969 (N.D. Ohio Feb. 9, 2015),
  *aff'd*, 2015 WL 5813194 (N.D. Ohio Oct. 5, 2015) ................................................ 19

*Kokocinski v. Collins*,
  2015 WL 5736165 (D. Minn. Sept. 30, 2015), *aff'd sub nom.*, *Kokocinski*
  *ex rel. Medtronic, Inc. v. Collins*, 850 F.3d 354 (8th Cir. 2017) ................................. 8

*Liguria Foods, Inc. v. Griffith Labs., Inc.*,
  2017 WL 976626 (N.D. Iowa Mar. 13, 2017) ......................................................... 14

*MGP Ingredients, Inc. v. Mars, Inc.*,
  245 F.R.D. 497 (D. Kan. 2007).............................................................................. 15

*Medtronic Sofamor Danek, Inc. v. Michelson*,
  2002 WL 33003691 (W.D. Tenn. Jan. 30, 2002) ..................................................... 19

*In re Michael Wilson & Partners Ltd.*,
  2007 WL 3268475 (D. Colo. Oct. 30, 2007) ............................................................. 15

*Northbrook Digital, LLC v. Vendio Servs., Inc.*,
  625 F. Supp. 2d 728 (D. Minn. June 9, 2008)........................................................ 8, 10

*Nunn v. Dillon Auto Sales, Inc.*,
  2016 WL 1369337 (D. Neb. Apr. 6, 2016) ................................................................ 9

*Phoenix Entm't Partners, LLC v. Lapadat*,
  2015 WL 12978162 (D. Minn. Nov. 16, 2015) ....................................................... 17

*Ragland v. Blue Cross Blue Shield of N.D.*,
  2013 WL 3776495 (D.N.D. June 25, 2013)............................................................... 9

*Scentsy, Inc. v. B.R. Chase, L.L.C.*,
  2012 WL 4523112 (D. Idaho Oct. 2, 2012)............................................................. 15

*Shukh v. Seagate Tech., LLC*,
  295 F.R.D. 228 (D. Minn. 2013)............................................................................. 11

*Sierra Club v. BNSF Ry. Co.*,
  2014 WL 5471987 (W.D. Wash. Oct. 29, 2014) ....................................................... 9

4845-5439-5980v.8 0105407-000002

*Superior Edge, Inc. v. Monsanto Co.*,
  2014 WL 7183797 (D. Minn. Dec. 16, 2014)..........................................................9, 11

*Taiyo Int'l, Inc. v. Phyto Tech Corp.*,
  275 F.R.D. 497 (D. Minn. 2011)............................................................................9, 11

*Taylor v. Illinois*,
  484 U.S. 400 (1988).................................................................................................11

*Tingle v. Hebert*,
  2017 WL 2335646 (M.D. La. May 30, 2017)............................................................14

*Unico Am. Corp v. Crusader Captive Servs. LLC*,
  2006 WL 2355524 (N.D. Ill. Aug. 11, 2006) ...........................................................11

*United States v. Wirtz*,
  2004 WL 2271745 (D. Minn. Sept. 25, 2004)...........................................................17

*Westbrook v. Charlie Sciara & Son Produce Co.*,
  2008 WL 839745 (W.D. Tenn. Mar. 27, 2008)..........................................................15

*White Cap Constr. Supply, Inc. v. Tighton Fastener & Supply Corp.*,
  2009 WL 3836891 (D. Neb. Nov. 13, 2009) .......................................................10, 11

## Other Authorities

Fed. R. Civ. P. 34(b)(2)(C) ...............................................................................................13

Fed. R. Evid. 408 .........................................................................................................4, 17

D. Minn. Local Rule 7.1(j) ..........................................................................................8, 20

*In the Matter of Blue Linx Holdings, Inc.*, Securities Exchange Act of 1934
  Release No. 78528 (Aug. 10, 2016)...........................................................................18

"Fast Answers: Insider Trading," U.S. Securities and Exchange Commission,
  *available at* https://www.sec.gov/fast-answers/answersinsiderhtm.html ....................18

4845-5439-5980v.8 0105407-000002

# I.     INTRODUCTION

Just months ago, this Court rightly found that Plaintiffs' general distrust of

Defendants failed to satisfy the heightened good cause standard required for a broad,

generic attorneys' eyes only ("AEO") designation.  Dkt. 50.  In doing so, the Court

recognized the parties' agreed Protective Order already allowed designations for

"Confidential" and "Highly Confidential—Source Code" Material.  The Court "strongly

encouraged" the parties to find a "reasonable compromise[]" on a "particularized" AEO

provision before bringing the dispute to its attention again.  *Id.* at 2 n.1.

Despite these conclusions and admonition, Plaintiffs now move the Court for an

even broader AEO designation, on the same bases as before.  As before, Plaintiffs do not

identify a single document that allegedly warrants broad AEO protection.  In addition,

Plaintiffs do not claim any Defendant misused a document produced under the existing

Protective Order, nor could they, since no party has produced any documents.  The Court

should reject Plaintiffs' renewed motion for the same reasons it rejected the last one:  An

AEO designation is an unwarranted "drastic remedy" where, as here, the requesting party

relies solely on speculative concerns that its opponent will misuse the information.

# II.     FACTUAL BACKGROUND

On August 25, 2016, Defendants Muddy Waters Capital LLC, Muddy Waters

LLC, and Carson C. Block (collectively, "the Muddy Waters Defendants"[1]) published a

report detailing cybersecurity vulnerabilities in implantable cardiac devices and related

---

[1] By referring to these defendants in the collective, defendants in no way waive defenses
to any effort to argue alter ego or piercing the veil theories, and expressly preserve their
defenses to any such claims or arguments.

4845-5439-5980v.8 0105407-000002

equipment that Plaintiff St. Jude Medical LLC ("SJM") manufactures.[2]  On September 7, 2016, SJM filed this lawsuit, alleging the August 25 report—and a follow-up report the Muddy Waters Defendants published on August 29, 2016—are defamatory.  Dkt. 1.  On February 23, 2017, the parties conferred about the scope of a protective order.  Doran Decl. ¶ 2.  The parties agreed to broad protections through designations for "Confidential Discovery Material" and "Highly Confidential—Source Code."

Specifically, the parties' agreed that "Confidential Discovery Material" means: "trade secret or other confidential research, development, or commercial information; commercially sensitive, non-public financial information; information that identifies doctors and healthcare providers, users, business affiliates, clients, and others who implant or use the parties' products or services; and/or health information deemed confidential under the Health Insurance Portability and Accountability Act ('HIPAA')."  Dkt. 50 at 3.

The parties could not, however, agree on whether the protective order should also include a "Highly Confidential—Attorneys' Eyes Only" designation.  *See* Doran Decl. Ex. A ("Joint Letter Br.").  In a joint letter to the Court dated March 10, 2017, SJM urged the Court to adopt an AEO designation that would include

> any Confidential Discovery Material that the Disclosing Party in good faith believes to contain highly sensitive confidential research and development information, financial or sales data, technical or commercial information, or current or future financial planning, business planning, develop and strategy documents, which is so sensitive or proprietary that it is entitled to extraordinary protection.

---

[2] At the time, St. Jude Medical LLC was St. Jude Medical, Inc.

4845-5439-5980v.8 0105407-000002

*Id.* (Proposed Order) at 3.  In more than twelve pages of briefing, SJM argued such a designation was needed to prevent (1) Muddy Waters and the MedSec Defendants (MedSec LLC, MedSec Holdings Ltd., and Justine Bone) from "attempt[ing] to use such information to further their business interests," and (2) the MedSec Defendants from disclosing sensitive information to SJM competitors.  Joint Letter Br. at 3.

The Court rejected these arguments, finding "Plaintiff has not shown that a 'Highly Confidential—Attorneys' Eyes Only Discovery Material' is currently necessary," and permitting it to move to amend the Protective Order "[s]hould such a provision be necessary as discovery progresses."  Dkt. 50 at 2.  The Court "strongly encouraged" the parties to "seek reasonable compromises on a particularized 'Attorney's Eyes Only' provision before bringing the issue to the Court again."  *Id.* at 2 n.1.  And it entered an order with the parties' proposed Confidential and Highly Confidential designations.  Dkt. 50 ¶¶ 2-3.  Under the order, information designated "Confidential" "shall be maintained in confidence by the parties to whom it is produced and shall be used solely for the purpose of prosecuting or defending the claims, including any appeals, in this litigation."  *Id.* ¶ 7 (emphasis added).  Confidential information may be shared only with a limited set of individuals, including the Court, the parties, their attorneys, court reporters, deponents, and experts.  *Id.* ¶ 8.

On January 4, 2017, Abbott Laboratories acquired SJM.  Dkt. 71 ¶ 9.  In April and May 2017, the parties engaged in settlement discussions.  Doran Decl. ¶ 3.  On May 10, 2017, SJM proposed a settlement that included the following:

**FDA/DHS/Government Disclosures**. In addition to the requirements regarding disclosure set forth in paragraph 10 above, Defendants specifically agree not to disclose any information, data, reports about St. Jude or Abbott products to FDA or the Department of Homeland Security (or any other domestic or foreign government agency or regulator) independently, without an official request or subpoena for information from any government agency. To the extent that FDA or the Department of Homeland Security (or any other domestic or foreign government agency or regulator) requests additional information, data, or reports from Defendants regarding St. Jude or Abbott products, Defendants agree not to provide or disclose any information, data, or reports without notice of at least fourteen (14) days to St. Jude and Abbott. To be clear, we do not seek to interfere with any inquiry from any government agency but to the extent you are asked to provide information in your possession or to communicate with these agencies regarding St. Jude or Abbott or your prior research (whether conducted by you or on your behalf), we seek advance notice of any such inquiry or communications.

*Id.* Muddy Waters' principal, Carson Block, tweeted the two substantive portions of the provision, which would have barred Defendants from (1) independently contacting any government agency about Plaintiffs' products; and (2) providing information about those products even if the government requested it, unless they gave Plaintiffs fourteen days' notice. Dkt. 82 at 1-2. Mr. Block also opined on the effect of such a provision, i.e., that Abbott and SJM were attempting to gag Defendants. *See id.* at 11-12. Although Abbott and SJM indicated the demand was subject to Federal Rule of Evidence 408, they did not ask for or obtain Defendants' agreement to not disclose the demand. Doran Decl. ¶ 3.

On May 23, 2017, Mr. Block contacted Miles White, Abbott's CEO, to discuss settlement. Block Decl. ¶ 4. Mr. White referred Mr. Block to his direct report, Robert Ford, Abbott's executive vice president for medical devices. *Id.* Mr. Block and Mr. Ford had a telephone conversation, in which Mr. Ford asked that Mr. Block not disclose the contents of the communications. *Id.* Mr. Block promised not to disclose them and has

abided by that agreement.  *Id.*  Mr. Block has also abided this Court's direction not to disclose the content of discussions during the June 28, 2017, settlement conference.  *Id.*

On April 26, 2017, Defendants served their first requests for production and interrogatories on SJM.  Clare Decl. (Dkt. 83-2) Ex. 2.  On June 2, 2017, SJM and Abbott filed an Amended Complaint, adding Abbott as a plaintiff and defamation claims based on Mr. Block's tweets about the settlement proposal.  Dkt. 71.  SJM served responses to Defendants' discovery requests on June 23, 2017.  Doran Decl. Ex. B.  The responses consist largely of boilerplate objections.  For instance, in response to Interrogatories 1-6 and 19, SJM wrote: "To the extent the Interrogatory requests highly confidential information, Plaintiff will produce that information only in the event that the Protective Order is amended to include a 'Highly Confidential—Attorney's Eyes Only Discovery Material' or materially equivalent provision."  *Id.* (responses to Interrogatories 1-6, 19).  And in response to Requests for Production 1-12, 16, 18, 20-42, 45-49, 51-53, 55-56, SJM responded it would "make a reasonable search for and produce relevant, non-privileged, responsive communications, if any, in its possession in a manner proportional to the needs of the case pursuant to the Protective Order in this case in the event that the Protective Order is, at some future time, amended to include a 'Highly Confidential – Attorney's Eyes Only Discovery Material' or materially equivalent provision, ***and*** that Defendants ***agree*** that such documents, if any, be produced designated with such provision, as appropriate."  *Id.* (response to RFP 12) (emphasis added); *see, e.g.*, *id.* (responses to RFPs 1-11, 16, 18, 20-42, 45-49, 51-53, 55-56) (same or similar).

Although both parties have provided written responses to discovery requests, neither has produced documents, and SJM has not identified a single document it believes is responsive to Defendants' requests and warrants heightened AEO protection. *Id.* ¶ 4. The parties also have not agreed to any search terms for such productions (though discussions have begun). *Id.* ¶ 4.

The parties attended a settlement conference with the Court on June 28, 2017. *See* Dkt. 76. While settlement negotiations were ongoing, Plaintiffs' counsel, on July 11, requested a conference to discuss their intent to again seek a broad AEO designation. Doran Decl. ¶ 5. The parties met and conferred on July 13, 2017. *Id.* During the call, Plaintiffs did not propose an AEO designation narrower than the one SJM previously proposed and the Court rejected. *Id.* In fact, the provision Plaintiffs now seek is ***broader***: It includes the ***same*** categories as the original proposal (which overlap with the "Confidential Discovery Material" designation) as well as a new broad category: "confidential regulatory submissions and communications." *See* Dkt. 83-1 ¶ 3.

In support, Plaintiffs advance the same two primary arguments as in March. *See* Joint Letter Br. In particular, they speculate, as they did then, that MedSec will share the information with Plaintiffs' competitors. *Compare id.* at 9 (asserting "the need for protection of St. Jude's proprietary technology and trade secrets related to that technology is especially important here given that MedSec may be dealing directly with competitors or potential competitors of St. Jude"), *with* Dkt. 82 at 14-15 (claiming "the MedSec Defendants expressly market their services to Plaintiffs' competitors in the

medical device industry and could use what they learn about Plaintiffs' proprietary information to benefit Plaintiffs' competitors and harm Plaintiffs").

Similarly, Plaintiffs theorize—as they did before—that Mr. Block might misuse the (unidentified) information, even though he still has done nothing unlawful. *Compare* Joint Letter Br. at 9 ("it is clear from one of Mr. Block's tweets that he disclosed confidential information of St. Jude"), *with* Dkt. 82 at 11 ("certain Defendants have already demonstrated a propensity to leak confidential information in an effort to harm Plaintiffs").[3] In any event, all Defendants have now sworn under oath that they understand and will honor the Protective Order's restrictions. *See* Block Decl. ¶ 5; Nayak Decl. ¶ 3; Bone Decl. ¶ 4.

## III.   ARGUMENT

Fundamentally nothing has changed over the last few months—not the law, the facts, the bases for Plaintiffs' request, or the nature of the request. Although Defendants have propounded discovery requests, the parties have not exchanged documents. Instead, Plaintiffs responded with eighty-seven pages of boilerplate objections. But just as before,

---

[3] Plaintiffs' briefing repeats several other arguments. For example, SJM argued in March, as they do now, that Defendants will not suffer prejudice because outside experts and in-house counsel can view AEO information (even though Defendants do not have any in-house counsel and need to be able to assist their outside experts). *Compare* Joint Letter Br. at 8 ("Defendants also cannot submit any evidence that it would be impossible (or even difficult) to find an outside expert . . . ."), *with* Dkt. 82 at 10 ("Defendants are all represented by the same outside counsel, and presumably will jointly retain experts and consultants."). And just as they did before, Plaintiffs again rely on vague allegations that Defendants' discovery requests will encompass trade secrets and proprietary or commercially sensitive information, without identifying any examples of such documents that would not be sufficiently protected under the current Confidential Discovery Material designation. *Compare* Joint Letter Br. at 7, *with* Dkt. 82 at 8.

a party's mere distrust of its opponent does not satisfy the heightened standard necessary to justify AEO protection, and courts rightly refuse to enter broad AEO provisions in the abstract. Plaintiffs again have made no "particular and specific demonstration" of the need for a sweeping AEO provision, and the Court should again deny their request— particularly given the severe prejudice such a provision would cause Defendants.[4]

### A. Plaintiffs Must Show Good Cause to Justify the "Drastic" Remedy of a Generic AEO Provision.

As Plaintiffs' authority makes clear, "[a] party seeking a protective order has the burden to show good cause." *Northbrook Digital, LLC v. Vendio Servs., Inc.*, 625 F. Supp. 2d 728, 757 (D. Minn. June 9, 2008). To meet this burden, Plaintiffs must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Honeywell Int'l Inc. v. ICM Controls Corp.*, 2013 WL 12139845, at *4 (D. Minn. Sept. 24, 2013) (quoting *Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973)).

Courts, including in the Eighth Circuit, routinely reject protective orders with AEO designations where, as here, the requesting party asks for sweeping AEO protection

---

[4] Under Local Rule 7.1(j), "[e]xcept with the court's prior permission, a party **must not file** a motion to reconsider. A party must show compelling circumstances to obtain such permission." (Emphasis added.) Because Plaintiffs ask for essentially the same broad AEO provision as before, on essentially the same bases, their motion asks the Court to reconsider its prior order. Plaintiffs neither sought permission for nor attempted to show "compelling circumstances" to justify this. While the Court can and should deny the motion on the merits, it should also strike their motion as an improper motion for reconsideration. *See, e.g.*, *Kokocinski v. Collins*, 2015 WL 5736165, at *1 n.2 (D. Minn. Sept. 30, 2015) ("Though not styled as such, [plaintiff's] motion is essentially a 'Motion to Reconsider,' which is governed by Local Rule 7.1(j)."), *aff'd sub nom.*, *Kokocinski ex rel. Medtronic, Inc. v. Collins*, 850 F.3d 354 (8th Cir. 2017).

based on broad allegations, rather than a particularized showing.  *See, e.g.*, *Ragland v. Blue Cross Blue Shield of N.D.*, 2013 WL 3776495, at *2 (D.N.D. June 25, 2013) (declining to adopt two-tiered order; directing parties to "follow the normal progression" to "demonstrate for each item of material why that extreme restriction upon disclosure is justified") (emphasis omitted); *Nunn v. Dillon Auto Sales, Inc.*, 2016 WL 1369337, at *2 (D. Neb. Apr. 6, 2016) ("[D]efendant has submitted no evidence explaining why an attorney's eyes only order is important to this case or how sensitive information may be relevant or divulged in the course of this litigation and to Defendant's detriment."); *Ark. River Power Auth. v. Babcock & Wilcox Power Generation Grp., Inc.*, 2015 WL 2128312, at *14 (D. Colo. May 5, 2015) (no good cause for two-tiered order);  *Sierra Club v. BNSF Ry. Co.*, 2014 WL 5471987, at *4 (W.D. Wash. Oct. 29, 2014) (rejecting two-tiered order; "one designation [is] sufficient to protect Defendant's interests").

Indeed, courts in this Circuit agree that AEO designations "are not commonplace" because they "result[] in a situation where, at least until trial, the opposing party itself cannot see the most crucial evidence in the case."  *Taiyo Int'l, Inc. v. Phyto Tech Corp.*, 275 F.R.D. 497, 502 (D. Minn. 2011); *see also CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*, 2017 WL 2311670, at *2-3 (N.D. Iowa May 26, 2017) (AEO designation "limits the 'ability of the receiving party to view the relevant evidence, fully discuss it with counsel, and make intelligent litigation decisions") (citation, internal quotation marks omitted); *Superior Edge, Inc. v. Monsanto Co.*, 2014 WL 7183797, at *4 (D. Minn. Dec. 16, 2014) ("AEO designations … are rarely used, because the opposing party itself cannot view the information that could be crucial to its claims.").  As a result, courts view orders

9

permitting AEO designations as a "drastic" remedy. *Bussing v. COR Clearing, LLC*, 2015 WL 4077993, at *2-4 (D. Neb. July 6, 2015) (permitting AEO designations a "drastic remedy" because doing so "limits the ability of a party to provide needed assistance to counsel, which may result in the denial of fundamental due process rights") (citation, internal quotation marks omitted). Such designations "should not be authorized simply because one of the parties would prefer that certain information not be disclosed to an opposing party." *Id.* at *2 (citation, internal quotation marks omitted); *see also Burris v. Versa Products, Inc.*, 2013 WL 608742, at *2 (D. Minn. Feb. 19, 2013) (protective order with one designation would "suffice to prevent the type of competitive harm" caused by disclosure of "formulaic computations for insurance pricing," even "trade secrets"); *Arvco Container Corp. v. Weyerhaeuser Co.*, 2009 WL 311125, at *6 (W.D. Mich. Feb. 9, 2009) ("[T]he indiscriminate use of 'attorney's eyes only' protective orders does pose a significant handicap on the restricted litigant.").

Against this authority, Plaintiffs offer *no* cases granting a party's request—over an objection—for a two-tiered protective order (in this District or elsewhere) where the parties are not *direct* competitors. For example, *Northbrook Digital, LLC*, Dkt. 82 at 6, concerned the applicability of an AEO designation to the plaintiff, a competitor who also was an attorney, *not* the propriety of a two-tiered order. 625 F. Supp. 2d at 758. In *Cardenas v. Prudential Insurance Co. of America*, 2003 WL 23101803, at *4 (D. Minn. Dec. 9, 2003), Dkt. 82 at 9, the court found a magistrate judge had not clearly erred by permitting an AEO designation for specific personnel files implicating personal *privacy* concerns; no such concerns exist here. And in *White Cap Construction Supply, Inc. v.*

*Tighton Fastener & Supply Corp.*, 2009 WL 3836891, at *2 (D. Neb. Nov. 13, 2009),

Dkt. 82 at 14, the court allowed an AEO provision for plaintiff's "profit, sales and

customer information" because the parties were "direct competitors," and plaintiff

claimed defendant had "siphoned away" its business, customers, and employees. *Id.*[5]

But as Defendants have previously explained, no defendant is a direct competitor of

Plaintiffs, Joint Letter Br. at 17, and *White Cap* does not stand for the proposition that a

court may enter a broad AEO provision, based on generalized assertions, simply because

the parties distrust each other generally or work in the same industry.

Courts' reticence to enter broad AEO provisions absent a specific showing of need

also makes sense for another reason: such provisions spur time-consuming side litigation

over the propriety of designations—none of which advances the goal of discovery to

ascertain the truth. *See Taylor v. Illinois*, 484 U.S. 400, 419 (1988) (discovery is

"integral to the quest for truth and [] fair adjudication") (Brennan, J., dissenting); *Carlson*

*Cos., Inc. v. Sperry & Hutchinson Co.*, 374 F. Supp. 1080, 1102 (D. Minn. 1973) (court

should apply the Rules "to accomplish their true purpose, that is, to arrive at the truth").

In the words of one federal district court, "two-tiered protective orders can be confusing

and frequently invite nonproductive satellite litigation." *Unico Am. Corp v. Crusader*

---

[5] *See also Bussing*, 2015 WL 4077993, at *3-4 (rejecting proposed broad AEO provision
and granting narrowed provision covering only two categories of documents—client lists
and confidential settlement agreements with third parties—because the parties were direct
competitors); *Shukh v. Seagate Tech., LLC*, 295 F.R.D. 228 (D. Minn. 2013) (magistrate
did not clearly err in finding subpoenas sought irrelevant information; two-tiered
protective orders not at issue or discussed); *Superior Edge*, 2014 WL 7183797, at *1-2
(parties stipulated to AEO provision, disputing only whether the protective order should
include additional source code protections); *Taiyo Int'l*, 275 F.R.D. at 501 (parties agreed
to AEO provision).

*Captive Servs. LLC*, 2006 WL 2355524, at *1, 2 (N.D. Ill. Aug. 11, 2006) (rejecting AEO provision that would have included documents about plaintiffs' marketing expenses and strategies and business strengths and weaknesses, even though "broad dissemination of this information could unfairly disadvantage" plaintiffs because confidentiality provision sufficed); *see also CMI Roadbuilding*, 2017 WL 2311670, at *3 (rejecting AEO designations in side litigation spurred by AEO provision, partly because designations would hamper opposing party's ability to assist its experts in understanding the material).

SJM's eighty-seven pages of boilerplate objections—in particular its repeated statements that it will produce documents "in the event that the Protective Order is … amended to include a 'Highly Confidential – Attorney's Eyes Only Discovery Material' or materially equivalent provision, and that Defendants agree that such documents, if any, be produced designated with such provision"—suggest Plaintiffs would use the proposed AEO provision expansively.  If the Court approves the proposed provision, the parties will (as they already have on these two AEO motions) embark on extensive side litigation over Plaintiffs' AEO designations.  Such a result contravenes the fundamental purpose of the discovery process, and the Court should again deny Plaintiffs' attempt to obtain an expansive AEO provision without any particularized or specific showing of need.

**B.     Plaintiffs Have Again Failed to Show Good Cause for a Generic AEO Designation.**

In their renewed motion, Plaintiffs again urge the Court to enter a generic AEO designation because they speculate Defendants will misuse information, in violation of

the Protective Order, to further Defendants' own business interests.  Dkt. 82 at 2.  The Court has already rejected these arguments, and should do so again.

As before, Plaintiffs offer no facts, much less "particular or specific" ones, to support their assertion that an AEO designation is necessary.  They identify no particular documents for *in camera* or other review, no log of allegedly highly confidential documents, and no distinction between merely "Confidential" "trade secret or other confidential research, development, or commercial information; commercially sensitive, non-public financial information," Dkt. 50 at 3, and allegedly highly confidential "highly sensitive confidential research and development information, financial or sales data, technical or commercial information, or current or future financial planning, business planning, develop[ment] and strategy documents," Dkt. 82 at 10 (alteration in original).

Although Plaintiffs rely on Defendants' discovery requests to show they must turn over sensitive information, Plaintiffs' responses to those requests generally do not identify what documents Plaintiffs intend to produce.  Instead, Plaintiffs state, some fifty-six times, the following objection (or its material equivalent): "To the extent the Interrogatory [or Request for Production] requests highly confidential information, Plaintiff will produce that information only in the event that the Protective Order is amended to include a "Highly Confidential – Attorney's Eyes Only Discovery Material" or materially equivalent provision."  Doran Decl. Ex. B, *passim*.[6]

---

[6] As Defendants have indicated in attempting to meet and confer about these responses, the responses violate Rule 34(b)(2)(C), which was amended in 2015 to prevent the kind of delay and confusion caused by Plaintiffs' strategy.  *See* Fed. R. Civ. P. 34(b)(2)(C) (requiring parties making discovery objections to "state whether any responsive materials

Moreover, the Protective Order already contains "Confidential" and "Highly Confidential—Source Code Information" categories. Dkt. 50 ¶¶ 2-3. These cover the same information that Plaintiffs seek to protect with their additional AEO provision, and limit disclosure only to a limited set of individuals, all of whom have agreed to be bound by the Protective Order's provisions. *CMI Roadbuilding*, 2017 WL 2311670, at *3 (de-designating documents marked as AEO because "the two individuals will be bound by the 'confidential' designation as described in the protective order and are not free to misuse this information nor use it outside of this pending lawsuit in any manner"); *Tingle v. Hebert*, 2017 WL 2335646, at *6 (M.D. La. May 30, 2017) (denying motion for additional protective order with AEO provision because "the existing Protective Order addresses many of Hebert's concerns about the need to protect the information sought"); *see also* Bone Decl. ¶ 4; Nayak Decl. ¶ 3; Block Decl. ¶ 5.

Importantly, no Defendant competes with any Plaintiff. Joint Letter Br. at 17-18; *see also* Bone Decl. ¶ 3. In such circumstances, courts in this District and nationwide regularly reject heightened AEO provisions in protective orders. *See, e.g.*, *Burris*, 2013 WL 608742, at *2 ("confidential" designation sufficed because, among other things, "[t]his is not a case where the opposing party is a competitor of the insurance company");

---

are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest."); *see also, e.g.*, *Liguria Foods, Inc. v. Griffith Labs., Inc.*, 2017 WL 976626, at *3 (N.D. Iowa Mar. 13, 2017) (finding improper objection to production of "trade secrets, or confidential or proprietary information without the entry of an appropriate protective order"); *Gibson v. Resort at Paradise Lakes, LLC*, 2017 WL 735457, at *3 (M.D. Fla. Feb. 24, 2017) (overruling repeated boilerplate objections that discovery requests "violates Defendants' rights to business and financial privacy" for failure to specify reasons particular documents meet that standard).

*Westbrook v. Charlie Sciara & Son Produce Co.*, 2008 WL 839745, at *5 (W.D. Tenn. Mar. 27, 2008) (rejecting AEO provision partly because parties were not competitors); *In re Michael Wilson & Partners Ltd.*, 2007 WL 3268475, at *3 (D. Colo. Oct. 30, 2007) (rejecting AEO provision because "the record before the Court does not support a finding that Petitioner is a direct competitor with Respondent"; standard protective order would protect against risk that "Petitioner may potentially represent a competitor").

Plaintiffs do not deny this fundamental principle. Instead, they (again) claim MedSec may provide cybersecurity consulting and testing services to competitors. *See* Dkt. 82 at 13-15; *see also* Joint Letter Br. at 8-9. But Plaintiffs' supposition that MedSec may someday provide services to their competitors would mean that AEO provisions are proper in nearly every piece of litigation between parties who work in similar industries. That is not the law. *CMI Roadbuilding*, 2017 WL 2311670, at *2-3 (removing AEO designation for 1,000 documents in litigation between asphalt plant maker and asphalt plant part supplier); *see also, e.g.*, *MGP Ingredients, Inc. v. Mars, Inc.*, 245 F.R.D. 497, 500-02 (D. Kan. 2007) (rejecting two-tiered order in patent infringement lawsuit between pet food maker and its upstream supplier); *Scentsy, Inc. v. B.R. Chase, L.L.C.*, 2012 WL 4523112, at *7 (D. Idaho Oct. 2, 2012) (requiring de-designation of AEO documents where parties sold nearly identical products in different markets).

Rather than establish any competitive harm, Plaintiffs pile speculation on supposition on assumption: that MedSec may violate the Protective Order by using confidential information to recruit new clients, those clients may be Plaintiffs' competitors, and MedSec may violate the Protective Order by using that information to

harm Plaintiffs. Dkt. 82 at 13-14. The Court should reject Plaintiffs' invitation to enter a sweeping AEO provision based solely on layers of speculation, and in the absence of any concrete and particularized harm from a potential disclosure.

Plaintiffs' motion again also claims, without basis, that Defendants will violate the existing Protective Order by disclosing material designated confidential for a purpose other than this litigation. Dkt. 82 at 12-14; *see also* Joint Letter Br. at 11-12 (asserting same arguments). The Court found these arguments unpersuasive before, and should again. As Defendants argued in March, "[a]t best," Plaintiffs' arguments show they "neither like[] nor trust[] [Defendants] and would be uncomfortable if [they] had access to discovery material, because they cannot be trusted to abide by the protective order. . . . ***A litigant's vague feeling of discomfort or its desire to hobble its opponent in litigation do not establish good cause***." *Arvco Container*, 2009 WL 311125, at *8 (emphasis added); *see also United States ex rel. Daugherty v. Bostwick Labs.*, 2013 WL 3270355, at *15 n.25 (S.D. Ohio June 26, 2013) (same); *see* Joint Letter Br. at 20-21. Nothing has changed. In fact, Defendants have now sworn under oath that they understand and will abide by the Protective Order—a step that should not be necessary but that Defendants have taken to assuage any concern. Bone Decl. ¶ 4; Nayak Decl. ¶ 3; Block Decl. ¶ 5.

Plaintiffs claim Mr. Block's tweet of an excerpt of their settlement demand "demonstrate[s] that [Defendants] are not to be trusted with confidential information in this dispute." Dkt. 82 at 1. The Court has seen this argument before, too. In the Joint Letter Brief, Plaintiffs argued that an AEO designation was warranted because Mr. Block had tweeted purportedly confidential information (information that Plaintiffs publicly

released the next day).  *See* Joint Letter Br. at 9.  There, as here, Mr. Block has violated

no laws, and his tweets are irrelevant to whether he or any other Defendant would violate

the Protective Order—particularly in view of their sworn statement that they will not.  *Id.*

at 19-20; Block Decl. ¶ 5; Bone Decl. ¶ 4; Nayak Decl. ¶ 3.

Plaintiffs emphasize they labeled the proposal "Confidential Settlement

Communication Subject to FRE 408."  Dkt. 82 at 1.  But neither Rule 408 (nor any other

rule or law) prohibits the disclosure of a settlement proposal.  Rather, Rule 408 is a rule

of admissibility.  *See* Fed. R. Evid. 408(a) ("Evidence of the following is not

admissible . . . .).  As a consequence, courts routinely admit settlement proposals that are

offered not to prove a party's liability but "for another purpose, such as proving bias or

prejudice of a witness, negativing a contention of undue delay, or proving an effort to

obstruct a criminal investigation or prosecution.'"  *Athey v. Farmers Ins. Exch.*, 234 F.3d

357, 362 (8th Cir. 2000) (quoting Fed. R. Evid. 408(b)); *United States v. Wirtz*, 2004 WL

2271745, at *4 (D. Minn. Sept. 25, 2004).  Indeed, Plaintiffs' settlement proposal here

will be relevant to their motive in bringing this lawsuit:  to silence a prominent critic who

(correctly) revealed serious and safety-related flaws in Plaintiffs' products.  *See, e.g.*,

*ESPN, Inc. v. Office of Comm'r of Baseball*, 76 F. Supp. 2d 383, 412-13 (S.D.N.Y. 1999)

(settlement discussions admissible to show party's "alleged improper motive" in pursuing

litigation); *Phoenix Entm't Partners, LLC v. Lapadat*, 2015 WL 12978162, at *1 (D.

Minn. Nov. 16, 2015) ("It also is universally accepted that Rule 408 does not bar

admission of settlement discussions when the plaintiff alleges that a wrong occurred

during settlement.") (citation, internal quotation marks omitted). Mr. Block's disclosure of one clause of SJM's proposal, therefore, was not unlawful.[7]

Plaintiffs also suggest Mr. Block will violate the Protective Order because he is financially motivated to do so. *See* Dkt. 82 at 13. But even assuming Mr. Block would violate a court order to benefit financially (he would not, Block Decl. ¶ 5), this argument lacks any basis. Plaintiffs suggest Mr. Block might short SJM stock. But SJM is no longer public and its stock cannot be shorted. Block Decl. ¶ 6. Nor would Mr. Block have any incentive to short Abbott stock. *See id.* Perhaps most importantly, Mr. Block is aware it would be unlawful to engage in stock trades based on confidential information. *Id.*; *see also* "Fast Answers: Insider Trading," U.S. Securities and Exchange Commission, *available at* https://www.sec.gov/fast-answers/answersinsiderhtm.html ("Illegal insider trading refers generally to buying or selling a security, in breach of a fiduciary duty or other relationship of trust and confidence, **while in possession of material, nonpublic information about the security**.") (emphasis added).

In short, nothing about Mr. Block's tweet or business gives any insight into how he—let alone any other defendant, who were not even alleged to have any role in or knowledge of his tweets—may handle information covered by the Protective Order in

---

[7] Mr. Block's statements are not defamatory. The tweets included the material terms of the settlement proposal, and it was his opinion (and the opinion of the other defendants) that this was an attempt to gag Defendants. Indeed, in the securities context, such provisions are unlawful. *See, e.g.*, *In the Matter of Blue Linx Holdings, Inc.*, Securities Exchange Act of 1934 Release No. 78528 (Aug. 10, 2016), ¶ 16, https://www.sec.gov/litigation/admin/2016/34-78528.pdf (requirement in severance agreements that former employees give notice to company before disclosing information to SEC violates SEC Rule 21F-17 by creating an "impediment to participation by its employees in the SEC's whistleblower program").

4845-5439-5980v.8 0105407-000002

this case.  And all have agreed to abide by it.  *See* Block Decl. ¶ 5; Bone Decl. ¶ 4; Nayak

Decl. ¶ 3 (swearing to abide by the terms of the Protective Order).

### C. The Proposed AEO Provision Would Prejudice Defendants.

Plaintiffs argue—in a single paragraph, without authority—that their proposal

would not prejudice Defendants.  Dkt. 82 at 10.  They made this argument before, too,

*compare id.* at 10 *with* Joint Letter Br. at 8, and the Court rightly rejected it.  As the cases

cited in the Joint Letter Brief make clear, particularly in complex technical cases such as

this one, client assistance is crucial.  Joint Letter Br. at 21-22 (quoting *Defazio v.*

*Hollister, Inc.*, 2007 WL 2580633, at *2 (E.D. Cal. Sept. 5, 2007); *K & M Int'l, Inc. v.*

*NDY Toy, LLC*, 2015 WL 520969, at *4-6 (N.D. Ohio Feb. 9, 2015), *aff'd*, 2015 WL

5813194 (N.D. Ohio Oct. 5, 2015); *Frees, Inc. v. McMillian*, 2007 WL 184889, at *5

(W.D. La. Jan. 22, 2007), *aff'd*, 2007 WL 1308388 (W.D. La. May 1, 2007)).

These concerns apply with even greater force, because—as Plaintiffs know from

the last round of briefing on this subject—Defendants do not have in-house counsel who

can assist outside counsel in understanding the documents produced and in developing

litigation strategies.  Block Decl. ¶ 8; Bone Decl. ¶ 6; *see also* Joint Letter Br. at 22-23

(quoting *Medtronic Sofamor Danek, Inc. v. Michelson*, 2002 WL 33003691, at *3 (W.D.

Tenn. Jan. 30, 2002)).  As one court recently noted, litigants "need to have people with

knowledge" of the specialized contents of documents review them to understand how

they apply to the claims in the case; in cases such as this one, that may be "a task that is

beyond the knowledge and skills of attorneys. Although, in theory, plaintiffs' retained

expert could do this . . . plaintiffs' own employees will have a greater ability to make that

determination in the first instance than a retained expert who would not be as knowledgeable about plaintiffs' designs." *CMI Roadbuilding*, 2017 WL 2311670, at *2-3. Plaintiffs' proposed AEO provision will hamper Defendants' ability to effectively and efficiently defend themselves, and the Court should again deny their motion.

## IV. CONCLUSION

For these reasons, Defendants respectfully ask that the Court strike Plaintiffs' motion under Local Rule 7.1(j), or in the alternative deny the motion.

Dated: August 2, 2017

**DAVIS WRIGHT TREMAINE LLP**

*/s/ Ambika K. Doran*
Ambika K. Doran, *admitted pro hac vice*
Bruce E.H. Johnson, *admitted pro hac vice*
Rebecca Francis, *admitted pro hac vice*
1201 Third Avenue, Suite 2200
Seattle, WA 98101
ambikadoran@dwt.com
brucejohnson@dwt.com
rebeccafrancis@dwt.com
(206) 622-3150

**GREENE ESPEL LLP**

John M. Baker, Reg. No. 174403
Lawrence M. Shapiro, P.A., Reg. No. 130886
Anna M. Tobin, Reg. No. 395706
222 S. Ninth Street, Suite 2200
Minneapolis, MN 55402
jbaker@greeneespel.com
lshapiro@greeneespel.com
atobin@greeneespel.com
(612) 373-0830

**ATTORNEYS FOR DEFENDANTS**